## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**                          **CRIMINAL ACTION**

**VERSUS**                                                                **NO. 12-138**

**GIE PRESTON**                                              **SECTION "K"(1)**

## ORDER and REASONS

Before the Court is Defendant Gie Preston's combined Motion for Acquittal and Motion for New Trial. (R. Doc. 228).  Having reviewed the motion, memoranda, record, and relevant law, the Court DENIES the motion for the reasons stated herein.

## I.    BACKGROUND

On June 6, 2013, Defendant Gie Preston was charged in a Superseding indictment with the following offenses:

i.    Conspiracy to Possess and to Possess with the Intent to Distribute 280 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1), 841 (b)(1)(A), and 846 (Count 1);

ii.   Conspiracy to possess firearms in furtherance of a drug trafficking offense in violation of 21 U.S.C. § 924(o) (Count 2);

iii.  Distribution of a quantity of cocaine base on January 11, 2011, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count 3);

iv.   Felon in possession of a firearm on January 11, 2011, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 4);

v.    Possession of a firearm in furtherance of a drug trafficking offense on January 11, 2011, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 5);

1

vi.  Possession with intent to distribute a quantity of cocaine base on December 8, 2011, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count 6);

vii.  Felon in possession of firearm on December 8, 2011, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 7);

viii.  Possession of a firearm in furtherance of drug trafficking offense on December 8, 2011, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 8);

ix.  Use of a communications facility in order to conspire to distribute and possess with the intent to distribute a quantity of cocaine base on December 9, 2011, in violation of 21 U.S.C. § 843(b) (Count 9); and

x.  Felon in possession of a firearm on December 9, 2011, 18 U.S.C. §§ 922(g)(1) and 924(a)(2)  (Count 10).

Superseding Indictment, R. Doc. 35, 1-5.

On November 3, 2014, the matter proceeded to trial. The Government called seventeen witnesses over the course of three days, and at the close of the Government's case, the Defendant made an oral motion for judgment of acquittal under Federal Rules of Criminal Procedure Rule 29 urging that the Government's case was insufficient to carry its burden of proof beyond a reasonable doubt. The Court reserved ruling on the motion, but allowed Defendant to renew his motion at the conclusion of trial.  At the conclusion of trial, the Defendant again urged the motion with oral reasons and the Court reserved its decision and directed counsel submit written reasons for the motion.

The jury returned a verdict on November 6, 2014 of guilty against the Defendant on Counts 1, 2, 4, 6, 7, 8, 9, and 10.  With respect to Count 2, the jury specifically found that Count 9 was the predicate drug-trafficking offense supporting its verdict. With respect to Count 8, the

jury specifically found Count 6 as the predicate drug-trafficking offense supporting its verdict. The jury acquitted the Defendant on Counts 3 and 5.

Defendant asserts his Motion for Acquittal under Federal Rules of Criminal Procedure Rule 29 together with his Motion for New Trial under Federal Rules of Criminal Procedure Rule 33. *See United States v. Hope*, 487 F.3d 224, 227 (5th Cir. 2007)(Rule 29/33 motion brought before district court); *United States v. Beran*, 546 F.2d 1316, 1319 (8th Cir. 1976)(Rule 29 and Rule 33 motions may be combined).  In addition to the oral reasons on which Defendant urged his Rule 29 motion, the Defendant asserts additional grounds with respect to several of the counts and argues that, alternatively, the evidence presented by the Government fails to satisfy the "interest of justice" standard under Rule 33 and requires a new trial.

## II.    LEGAL STANDARDS

### A.    Motion for Acquittal

A motion for judgment of acquittal challenges "the sufficiency of the evidence to convict." *United States v. Hope*, 487 F.3d 224, 227 (5th Cir. 2007)(quoting *United States v. Lucio,* 428 F.3d 519, 522 (5th Cir.2005)). Rule 29(a) of the Federal Rules of Criminal Procedure provides that after the government closes its evidence or after the close of all evidence, on a defendant's motion, the court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." As the Supreme Court stated in *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), "[t]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See also United States v. Hope,* 487 F.3d at 227–28.  The court determines "only whether the

jury made a rational decision, not whether its verdict was correct on the issue of guilt or innocence." *United States v. Dean*, 59 F.3d 1479, 1484 (5th Cir. 1995)(citation omitted). "[I]f the fact finder was presented with sufficient evidence to support the verdict reached, that verdict must be upheld." *Lucio,* 428 F.3d at 522.

In viewing the evidence in the light most favorable to the prosecution, the court must "consider the countervailing evidence as well as the evidence that supports the verdict in assessing sufficiency of the evidence." *United States v. Moreland*, 665 F.3d 137, 149 (5th Cir. 2011)(quoting *United States v. Brown,* 186 F.3d 661, 664 (5th Cir.1999)); *see United States v. Peterson*, 244 F.3d 385, 389 (5th Cir.2001) ("All evidence is considered, not just that supporting the verdict, but the evidence need not conclusively disprove alternatives; the jury is free to choose among reasonable constructions of the evidence.").  The court must also draw upon "*reasonable* inferences from the evidence to support the verdict." *United States v. Percel,* 553 F.3d 903, 910 (5th Cir.2008) (quoting *United States v. McDowell,* 498 F.3d 308, 312 (5th Cir.2007)) (emphasis added).  Though the court may not "weigh[] the evidence or assess[] the credibility of witnesses," *United States v. Lopez*, 74 F.3d 575, 577 (5th Cir. 1996)(citations omitted), "[a] verdict may not rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference." *United States v. Moreland,* 665 F.3d 137, 149 (5th Cir.2011) (quoting *United States v. Rojas Alvarez*, 451 F.3d 320, 333-34 (5th Cir. 2006)).

Nevertheless, "[t]he evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." *United States v. Mendoza*, 522 F.3d 482, 488 (5th Cir. 2008) (quoting *United States v. Ortega Reyna*, 148 F.3d 540, 543 (5th Cir.1998)). "Circumstances altogether inconclusive, if separately considered, may, by their number and joint

operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof." *United States v. Vasquez*, 677 F.3d 685, 692 (5th Cir.2012).  "But the evidence presented must allow the jury to find every element of the offense beyond a reasonable doubt." *United States v. Uvalle–Patricio*, 478 F.3d 699, 701 (5th Cir.2007) (internal quotation and citation omitted).

### B.    Motion for New Trial

Rule 33 states that, upon the Defendant's motion, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33; *United States v. Wall*, 389 F.3d 457, 466 (5th Cir. 2004). "The burden of demonstrating that a new trial is warranted 'in the interest of justice' rests on the defendant." *United States v. McElwee,* 2010 WL 235007, *2 (W.D.La. Jan. 15, 2010) citing *United States v. Soto–Silva,* 129 F.3d 340, 343 (5th Cir.1997).  Rule 33 motions are not favored and are viewed with great caution. *United States v. Blackthorne,* 34 F.3d 449, 452 (5th Cir.2004). "The grant of a new trial is necessarily an extreme measure, because it is not the role of the judge to sit as a thirteenth member of the jury." *United States v. O'Keefe,* 128 F.3d 885, 898 (5th Cir.1997); *but see United States v. Robertson,* 110 F.3d 1113, 11120 n. 11 (5th Cir.1997).

"Motions for new trial are based either on the grounds that the verdict was against the weight of the evidence or that some error was committed by the court or the prosecution which substantially affects the rights of the accused." *United States v. Simms*, 508 F. Supp. 1188, 1202 (W.D. La. 1980).  In the Fifth Circuit, "the generally accepted standard is that a new trial ordinarily should not be granted unless there would be a miscarriage of justice or the weight of evidence preponderates against the verdict." *United States v. Wright,* 634 F.3d 770,775 (5th Cir. 2011); *see Wall*, 389 F.3d at 466.

Unlike the Rule 29 motion where the evidence must be viewed in a light most favorable to the verdict, in determining whether to grant a Rule 33 motion, the Court "may weigh the evidence and may assess the credibility of the witnesses during its consideration of the motion for new trial." *United States v. Tarango*, 396 F.3d 666, 672 (5th Cir. 2005)(citing *Robertson*, 110 F.3d at 1117). Thus, the court has broad discretion to grant a new trial "in the interest of justice." *United States v. Scroggins*, 379 F.3d 233 (5th Cir.2004), *vacated on other grounds*, 543 U.S. 1112, 125 S.Ct. 1062, 160 L.Ed.2d 1049 (2005); *United States v. Antone*, 603 F.2d 566 (5th Cir. 1979). Deference is given to the district court because it actually observed the demeanor of witnesses and their impact on the jury. *Wall,* 389 F.3d at 465; *O'Keefe,* 128 F.3d at 893. "[E]vidence which merely discredits or impeaches a witnesses' testimony does not justify a new trial." *United States v. Blackthorne*, 378 F.3d 449, 455 (5th Cir. 2004)(citation omitted). A new trial may be appropriate where the evidence only tangentially supports a guilty verdict and the evidence "preponderates sufficiently heavily against the verdict such that a miscarriage of justice may have occurred." *Tarango*, 396 F.3d at 672 (citations omitted). However, the court must not usurp the jury's function "or simply set aside a jury's verdict because it runs counter to result the district court believed was more appropriate." *Id.* at 672 (citations omitted).

## III.    DISCUSSION

### A. Count One: Conspiracy to Distribute and Possess with the Intent to Distribute Cocaine Base ("Crack")

The Defendant contends that the Government failed to present sufficient evidence that the Defendant was part of a conspiracy between the Defendant, Gie Preston, and the co-defendants, Burnell and Sonny Allen as alleged in Count One, or that the conspiracy involved more than 280 grams or more of cocaine base. Defendant argues that the testimony of the Government's

witnesses failed to establish a conspiracy but merely supports the conclusion that the Defendant was part of a group of loosely connected people of various relations who individually sold drugs from an area populated by drug users and sellers. Further, the Defendant contends that, at most, the Government's evidence established multiple conspiracies between various individuals but none consisting of the conspiracy alleged in Count One of the Superseding Indictment. Finally, the Defendant argues that the Government failed to establish beyond a reasonable doubt that the Defendant and his alleged co-conspirators distributed 280 grams or more of cocaine base but instead only offered evidence of sales constituting a small fraction of purchases necessarily to reach the requisite 280 grams.

To prove conspiracy under 21 U.S.C. § 846, the government must prove beyond a reasonable doubt that: "(1) an agreement existed between two or more persons to violate federal narcotics law, (2) the defendant knew of the existence of the agreement, and (3) the defendant voluntarily participated in the conspiracy." *United States v. Ochoa,* 667 F.3d 643, 648 (5th Cir.2012).

The Government need not have to show that a defendant entered into an express agreement to engage in a conspiracy: "[A] tacit, mutual agreement with common purpose, design, and understanding will suffice." *United States v. Daniels*, 723 F.3d 562, 575 (5th Cir. 2013) *modified in part on rehearing,* 729 F.3d 496 (5th Cir.2013) (citing *United States v. Zamora,* 661 F.3d 200, 209 (5th Cir.2011)(internal quotation marks omitted)). Indeed, "[t]he agreement, a defendant's guilty knowledge and a defendant's participation in the conspiracy all may be inferred from the 'development and collocation of circumstances.' " *United States v. Posada-Rios*, 158 F.3d 832, 857 (5th Cir. 1998)(quoting *United States v. Maltos,* 985 F.2d 743, 746 (5th Cir.1992)).  "[A] defendant need not know all of the specific details of the conspiracy,

7

need not know all of the other conspirators, and need not have ever physically touched any of the drugs involved in the conspiracy." *Daniels,* 723 F.3d at 575 (citation omitted).

The Government also need not prove an overt act to show participation in a conspiracy. *United States v. Bermea,* 30 F.3d 1539, 1552 (5th Cir.1994); *see United States v. Turner*, 319 F.3d 716, 721 (5th Cir. 2003). Though not sufficient alone to prove participation in a conspiracy, presence and association may be considered by the jury along with other circumstantial evidence in finding that the defendant participated in a conspiracy. *See United States v. Chavez,* 947 F.2d 742, 745 (5th Cir.1991). "As long as it is not factually insubstantial or incredible, the uncorroborated testimony of a co-conspirator, even one who has chosen to cooperate with the government in exchange for non-prosecution of leniency, may be constitutionally sufficient evidence to convict." *Turner*, 319 F.3d at 721 (5th Cir. 2003)(quoting *United States v. Westbrook,* 119 F.3d 1176, 1190 (5th Cir.1997))(internal quotation marks omitted). However, "[a] defendant may not . . . be convicted of a drug conspiracy merely by evidence that he associated with other drug conspirators or by evidence that places the defendant in 'a climate of activity that reeks of something foul.'" *Posada-Rios*, 158 F.3d at 857-58 (citation omitted). Yet, "[a] conspiracy conviction is . . . supported by mere proof of an agreement involving drugs, and does not require actual possession and seizure of the drugs." *United States v. Rodney*, 532 F. App'x 465, 469 (5th Cir. 2013) (citing *United States v. Valdez,* 453 F.3d 252, 257 (5th Cir.2006)).

In addition to the elements of conspiracy, "where 'the government seeks enhanced penalties based on the amount of drugs under 21 U.S.C. § 841(b)(1)(A) or (B), the drug quantity must be stated in the indictment and submitted to the fact finder for a finding of proof beyond a reasonable doubt.'" *United States v. Walker*, No. 13-40689, 2015 WL 735323, at *11 (5th Cir.

Feb. 23, 2015) (quoting *Daniels,* 723 F.3d at 570). Nevertheless, the Fifth Circuit held in *Daniels* that:

> [W]here a defendant may be subject to enhanced statutory penalties because of drug quantity or type, the requisite fourth "element" under Apprendi is not a formal element of the conspiracy offense. Hence, defendants' challenges to the quantity of cocaine charged in ... the indictment do[ ] not go to the validity of their convictions, but rather to the sentence that the district court may impose.

*Id.* at *12 (quoting Daniels, 723 F.3d at 573).  Thus, the conviction remains unaffected by the sufficiency of the evidence as to the amount of drugs involved, which is not a formal element of the offense, and the Court will not consider the Defendant's argument as to evidence demonstrating the amount of drugs involved in the offense at this time.

As to the Defendant's assertion that multiple conspiracies may be found rather than a single conspiracy, "[a] single conspiracy can be found when the indictment adequately shows a singular conspiratorial objective, such as a large-scale narcotics transaction." *United States v. Metz,* 608 F.2d 147, 153 (5th Cir.1979), *cert. denied,* 449 U.S. 821, 101 S.Ct. 80, 66 L.Ed.2d 24 (1980).  Whether a single conspiracy or multiple conspiracies existed is a question of fact for the jury to determine. *United States v. Michel*, 588 F.2d 986 (5th Cir. 1979); *United States v. Rodriguez,* 509 F.2d 1342 (5th Cir. 1975).  There are various factors typically considered in making a determination as to whether a given criminal endeavor comprises one, or more than one, conspiracy. *United States v. Elam*, 678 F.2d 1234, 1246 (5th Cir. 1982). These factors include: "(1) the existence of a common goal; (2) the nature of the scheme; and (3) the overlapping of the participants in the various dealings." *United States v. Morris,* 46 F.3d 410, 415 (5th Cir. 1995).

The Fifth Circuit has broadly defined this criterion and has adopted an expansive notion of a "common purpose," finding a common purpose existed where, for example, there was a plan to purchase cocaine involved various participants over three years or where there were a series of staged automobile accidents involved different participants, in different locations, and over an extended period of time. *Morris*, 46 F.3d at 415 (citations omitted).  As to the nature of the scheme, "[i]f there is one overall agreement among the various parties to perform different functions in order to carry out the objectives of the conspiracy, then it is one conspiracy." *United States v. Perez*, 489 F.2d 51, 62 (5th Cir. 1973). The Fifth Circuit has said:

> Where the activities of one aspect of the scheme are necessary or advantageous to the success of another aspect of the scheme or to the overall success of the venture, where there are several parts inherent in a larger common plan, or where the character of the property involved or the nature of the activity is such that knowledge on the part of one member concerning the existence and function of other members of the same scheme is necessarily implied due to the overlapping nature of the various roles of the participants, the existence of a single conspiracy will be inferred.

*Elam*, 78 F.2d at 146 (citations omitted). Thus, "[i]f [an] agreement contemplates bringing to pass a continuous result that will not continue without the continuous cooperation of the conspirators to keep it up, then such agreement constitutes a single conspiracy." *Perez*, 489 F.2d at 62.  Finally, as to the overlapping of the participants in the conspiracy, "[t]he more interconnected the various relationships are, the more likely there is a single conspiracy. " *Morris*, 46 F.3d at 416. The members of a conspiracy which functions through a division of labor need not have an awareness of the existence of the other members, or be privy to the details of each aspect of the conspiracy. *Elam,* 678 F.2d at 1246.  Moreover, "[t]here is no requirement that every member must participate in every transaction to find a single conspiracy. Parties who knowingly participate with core conspirators to achieve a common goal may be members of an

overall conspiracy." *United States v. Richerson,* 833 F.2d 1147, 1154 (5th Cir.1987); *see United States v. DeLeon*, 641 F.2d 330 (5th Cir. 1981).

At trial, the Government's witness, Officer Brian Pollard, testified that, starting in 2009, he observed Gie Preston, Lionel Allen, Burnell Allen, Mark Rayfield, and Emanuel Casame selling drugs together "like a gang" in the general vicinity of the Allens' grandmother's home. He testified that he witnessed the group's activity morning to night over a period of years and that he observed the group working together.  Two witnesses who testified that they purchased crack cocaine from the Defendant and the Allen family also testified as to the group's activity. Specifically, Nukema Frith testified that she saw Sonny Allen, Burnell Allen, and Gie Preston selling crack for years, that she had purchased crack from all three of the defendants while they were in the vicinity of each other, and that she had never seen them compete for customers. Brandy Dwyer, another purchaser, testified that she saw Sonny Allen and Burnell Allen selling crack together every day, all day. A witness who purchased crack from Sonny Allen testified that she was not "in business with" Gie Preston and does not know him.

Three co-conspirators—Eugene Allen, Emanuel Casame, and Mark Rayfield—testified as well. Mark Rayfield testified that he started selling crack with Burnell Allen, Sonny Allen, and Gie Preston in 2010 and that Burnell asked him to go back to the Allens' grandmother's house, "everyone's stash place," to pick up a quarter-ounce of crack for him.  Rayfield testified that while the Allens shared a stash spot, Gie Preston had his own separate stash spot at the house.  Eugene Allen testified that he sold crack along Sonny Allen, Gie Preston, and Burnell Allen each taking turns selling crack but stated that they were "hustling for [them]selves" and each kept whatever money they earned. Eugene Allen also testified that after the arrest for the drug crimes which resulted in his 2007 arrest, that "everyone went their separate ways." Emanuel

Casame testified that he was present when Burnell Allen, Sonny Allen, and Gie Preston pooled their money together to buy drugs on at least two occasions in 2010 and 2011 from Isaac Thompson.  Thompson testified that he sold Sonny Allen between one-half and one ounce of powder cocaine every two weeks and Burnell Allen one to two ounces every two weeks.

The Government also presented evidence of audio recordings of jail calls in late 2011 between the Defendant and his girlfriend, Keoka Wright, wherein he attempted to acquire support of his alleged co-conspirators to assist his girlfriend in obtaining his release from jail.  In addition, a recorded phone call from December 9, 2011 was presented wherein the Defendant spoke with Lionel Allen and attempted to direct him as to where drugs were stashed.

The Defendant's argument that no conspiracy existed is heavily based on the fact that the Defendant sold crack cocaine separately from his co-conspirators, that he did not commingle cash earned from sales or the crack cocaine stash itself with that of the co-conspirators, and that the other co-conspirators were unwilling to aid the Defendant after his arrest. However, a jury could rationally infer from Officer Pollard's testimony as well as the co-conspirators' and purchasers' testimony that an agreement existed to join together in mutual support and protection to sell crack cocaine while not directly sharing in profits.  The evidence presented shows more than mere presence in a single location; the jury may rationally conclude that, based on the testimony of the co-conspirators and other witnesses, the Defendant the co-conspirators established a regular pattern and collaborated to sell crack cocaine together existed over a period of years.

The evidence also is sufficient to support a rational jury's finding of one conspiracy rather than several conspiracies not charged in the indictment.  The Defendant argued specifically that a separate conspiracy existed between Keoka Wright and the Defendant. The

evidence discussed above is sufficient for a jury to rationally conclude that there was a common

goal of deriving mutual financial gain from collaborating in the sale of crack cocaine in the same

area.  The nature of the scheme involved each member selling crack cocaine individually,

carrying out different objectives, yet remaining part of the same common goal. Finally, witnesses

testified as to the interrelationships among the Burnell Allen, Sonny Allen, Gie Preston, Mark

Rayfield, and Emanuel Casame, most notably that the co-conspirators sold crack cocaine along

side each other all day around the same central location (the Allens' grandmother's house) for a

number of years.  While other conspiracies might have existed, a jury could infer that the

evidence presented established a single conspiracy involving the Defendant. Viewing the

evidence in the light most favorable to the prosecution, and drawing all reasonable inferences in

favor of the verdict, the Court finds that a rational juror could have found Preston guilty of

conspiracy under 21 U.S.C. § 846 as charged in Count 1 beyond a reasonable doubt.


     **B.**     **Count Two: Conspiracy to Possess Firearms in Furtherance of a Drug Trafficking Crime**

     As to Count 2, the jury found the Defendant guilty of conspiracy to possess firearms in

furtherance of a drug trafficking crime, in violation of 18 U.S.C. §924(o). The jury verdict form

submitted to the jury included four predicate offenses which the jury could have found the

Defendant furthered by conspiring to possess firearms: Count 1, Count 3, Count 6, and Count 9.

The jury selected Count 9 as the predicate offense upon which the Defendant's conviction of

conspiracy to possess firearms in furtherance of a drug-trafficking crime is based, which was a

violation of 21 U.S.C. § 843(b).

     The Government's proposed verdict form included the four predicate counts and the

Court's proposed jury verdict form did likewise. No objection was made as to the inclusion of

Count 9 as a predicate offense to Count 2 before trial. Now, however, the Defendant contends that the jury's finding that the Defendant conspired to possess firearms in furtherance of the drug-trafficking crime in Count 9 is irrational and fails to support a finding of guilt beyond a reasonable doubt.

Count 2 of the Superseding Indictment charges the Defendant with knowingly conspiring with other co-defendants to "possess firearms in furtherance of drug trafficking crimes, as alleged in this Superseding Indictment; all in violation of Title 18, United States Code, 924(o)." R. Doc. 35, 2.  Title 18, United States Code, section 924(o) makes it a crime to conspire to commit an offense under subsection (c) of the statute, including possession of a firearm in furtherance of a drug trafficking crime. *See* 18 U.S.C. § 924(o), (c)(1)(A).  The Superseding Indictment also charges the Defendant in Count 9 with "knowingly and intentionally us[ing] a communications facility, to wit, a telephone, in committing, causing, and facilitating the commission of a violation of [21 U.S.C. § 846], that is, conspiracy to distribute and possess with the intent to distribute cocaine base ("crack")" in violation of 21 U.S.C. § 843(b). R. Doc. 35, 5. "A conviction under § 843(b) requires proof that a defendant (1) knowingly or intentionally (2) used a communications facility (3) to facilitate the commission of a *drug offense.*" *United States v. Henao-Melo*, 591 F.3d 798, 804-05 (5th Cir. 2009).

The Defendant's conviction under § 843(b) was based on a jail phone call made on December 9, 2011. During the phone call, the Defendant spoke with co-conspirator Lionel Allen attempting to locate hidden crack cocaine; Allen then handed the phone to another individual

with whom the Defendant discussed transferring possession of the "Tec" or Tech 9 firearm[1] to yet another unidentified individual.

The Defendant contends that, "[r]ead together, therefore, the jury found that Mr. Preston conspired to possess firearms in furtherance of his use of a telephone to conspire to distribute and possess with intent to distribute crack," which he argues is illogical. (Def. Mem. Supp. Mot. Acquittal, R. Doc. 228, 12). In the abstract, this literal reading of the statutes presents an unrealistic scenario based on the Defendant's belief that "it is difficult to imagine how a phone call, illicit or otherwise, could be advance [*sic*] by the possession of firearms." (R. Doc. 228, 12). The Government argues, however, that it is not difficult and indeed was rational for the jury to find that the Defendant conspired to possess firearms in furtherance of the drug trafficking accomplished via the use of the telephone call. (*See* Govt. Mem. Opp., R. Doc. 263, 11).

The Court finds the Government's iteration persuasive for several reasons. First, Defendant's reading fails to emphasize the fact that the crime charged was a conspiracy, or an *agreement* to commit a federal crime, not simply possession. In addition, the aim of the conspiracy here—a violation of 924(c)(1)(A)—condemns acts of possession, actual and constructive.  Read together, the Fifth Circuit has found that a defendant's constructive possession of a firearm may sustain a conviction of conspiracy to possess firearms in furtherance of a drug trafficking crime. *United States v. Harris*, 740 F.3d 956, 964 (5th Cir.) *cert. denied*, 135 S. Ct. 54, 190 L. Ed. 2d 56 (2014).[2]  Second, while the possession must be "in furtherance of" a drug trafficking crime, such possession under § 924(c)(1)(A)  may be "established if the Government proves by a preponderance of the evidence 'that a temporal and spatial relation

---

[1] *See* discussion *infra* as to Count 10 as to evidence establishing that "Tec" was slang for a firearm.
[2] In that case, the Fifth Circuit found that phone calls and evidence of drugs and firearms in a co-conspirator's apartment could support convictions of conspiracy to possess a firearm in furtherance of a drug trafficking crime in addition to conspiracy to possess with intent to distribute controlled substances. *Harris*, 740 F.3d at 963-64.

existed between the weapon, the drug trafficking activity, and the defendant.'" *United States v. Rangel*, 174 F. App'x 859, 860 (5th Cir. 2006)(quoting *United States v. Hooten,* 942 F.2d 878, 882 (5th Cir.1991)).  The temporal and spatial connection to the crime need not be as linear and literal as the Defendant's argument suggests, which is underscored by the Fifth Circuit's holding in *Harris*. *See* 740 F.3d at 964.

Third, as to the underlying crime in § 924(c)(1)(A) the Fifth Circuit has defined "in furtherance of" broadly as possession that furthers, advances, or helps forward the drug trafficking offense. *United States v. Ceballos-Torres*, 218 F.3d 409, 415 (5th Cir. 2000).  A rational jury may have found that the conspiracy to possess the firearm (albeit constructively) forwards or advances the offense of unlawfully using a communications facility to further a felony crime (conspiracy to possess and distribute drugs) in that the phone call would not have occurred but for the conspiracy to possess firearms. Alternatively, as the Government suggests, the conspiracy to possess the firearm could have furthered the drug trafficking accomplished via the phone call. This is supported by the fact that a § 843(b) violation is considered a "drug trafficking crime"[3] as well as the nature of that crime itself.  It is not simply a phone call that is prohibited; the purpose of the phone call communication—furthering felony crime—makes the call a crime.[4] To say that the Defendant was convicted of possession of firearm "to further a phone call" oversimplifies this distinction. Indeed, courts rely on the underlying felony offense

---

[3]A drug trafficking crime is "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46." 18 U.S.C. §924(c)(2).

[4]The Fifth Circuit has reasoned that the third element of § 843(b)—facilitating a drug offense—requires proof of the underlying drug offense even if not separately charged. *United States v. Mankins*, 135 F.3d 946, 949 (5th Cir. 1998). Thus, since § 843(b) can be viewed as prohibiting the drug related acts, the Fifth Circuit found that § 843(b) would fall under the definition of a "felony drug offense" in that it prohibits or restricts conduct relating to unlawful controlled substances for purposes of sentencing enhancement.  Further, the Fifth Circuit has held that the § 843(b) crime of using a communications facility cannot be considered a "drug trafficking offense" in and of itself for purposes of sentencing under the Sentencing Guidelines as it may prohibit some conduct that does not fall within the Sentencing Guidelines' definition of drug trafficking offense. *United States v. Henao-Melo*, 591 F.3d 798, 805-06 (5th Cir. 2009). Both cases demonstrate the degree of punishment applicable to § 843(b) convictions depend in large part on the nature and extent of the underlying offenses.

16

in § 843(b) to apply the United States Sentencing Guidelines to the conduct accomplished by the phone call. To ignore the underlying conduct of conspiring to possess and distribute drugs in this context, as Defendant's argument appears to do, is akin to finding that the act of making a phone call itself is illegal.

Ultimately, the Defendant's reading obfuscates, abstractly, the application of this crime to the criminal conduct that occurred. The reasoning above also applies to the Defendant's argument that, if the jury found the phone call a basis for convicting the Defendant of a conspiracy to possess firearms, the conspiracy is not the same as that charged in the indictment; instead, he argues, it is "far narrower" than the conspiracy in Count two that spans from a "time unknown" to June 6, 2013.  The Fifth Circuit has stated the following in the context of conspiracies to possess narcotics:

> Possession may be constructive if the evidence indicated the defendants ownership, dominion and control over the [narcotic]. *United States v. Richardson*, 848 F.2d 509, 512 (5th Cir.1988). In addition, even if the issues of Lopez's constructive possession with intent to distribute were not clearly present, a conspirator is liable for the substantive offenses of his co-conspirators while he is a member of the conspiracy. *United States v. Garcia*, 917 F.2d 1370, 1377 (5th Cir.1990) (quoting *United States v. Basey*, 816 F.2d 980, 997 (5th Cir.1987).

*United States v. Ornelas-Rodriguez*, 12 F.3d 1339, 1346 (5th Cir. 1994).  As stated above, the Defendant need not be involved in every overt act of the conspiracy or even be aware of every overt act to sustain a conviction for conspiracy.  The mere fact that this act represents one overt act on the part of the Defendant does not support the conclusion that multiple conspiracies existed or that this conspiracy was not the same as that alleged in the indictment.

The Court reiterates that, in assessing the sufficiency of the evidence, "courts remain empowered to consider . . . whether the inferences drawn by a jury were rational, as opposed to being speculative or insupportable, and whether the evidence is sufficient to establish every

17

element of the crime." *United States v. Vargas-Ocampo*, 747 F.3d 299, 302 (5th Cir.) *cert. denied,* 135 S. Ct. 170, 190 L. Ed. 2d 121 (2014). The focus is not on "whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *United States v. Pennington,* 20 F.3d 593, 598-99 (5th Cir. 1994)(quoting *Herrera v. Collins,* 506 U.S. 390, ——, 113 S.Ct. 853, 861, 122 L.Ed.2d 203 (1993)). "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt," in order to be sufficient. *United States v. Grant*, 683 F.3d 639, 642 (5th Cir. 2012)(citation and internal quotation marks omitted).  Viewing the evidence in the light most favorable to the verdict, the Court finds that a rational jury could find the Defendant guilty of conspiring to possess firearms in furtherance of a drug trafficking crime as charged in Count two.

### C.      Count Four: Felon in Possession of a Firearm

As to Count four, the Defendant contends that Government failed to prove beyond a reasonable doubt that the Defendant actually or constructively possessed the .40 caliber pistol allegedly found under the hood of his car on January 11, 2011.  The Defendant argues that the Government was required to prove more than the fact that Preston owned the car and must show guilty knowledge.  The Defendant argues that, although Brandy Dwyer testified that she saw the Defendant produce a gun from under the hood of his car, the evidence did not establish that the Defendant was aware of the gun found under the hood of his car which was "partially metallic" and not "all black" as the witness had testified. Further, the Defendant argues that the Government failed to rule out possibility that someone other than Preston put the gun beneath the hood of the car.

18

In cases where, as here, the contraband is hidden, the government may be required to prove more than mere presence of the contraband in the vehicle to support a conviction that includes a "knowledge" element. *United States v. Franklin*, 561 F.3d 398, 403 (5th Cir. 2009). Circumstantial evidence as to knowledge may be considered. *Id.* at 404. "Additional evidence of guilt may come from nervousness, inconsistent statements, implausible stories, or possession of large amounts of cash by the defendants." *United States v. Pennington*, 20 F.3d 593, 598 (5th Cir. 1994)(citation omitted).

The Government presented evidence as to guilty knowledge on the part of the Defendant. Not only did the witness testify that the Defendant proudly demonstrated that he kept a gun underneath the hood of his car, Officer Jason Germann's testimony established that the Defendant used the vehicle to travel to and from his residence at the time he was arrested and the gun was found. Moreover, the jury listened to recorded statements Defendant made in response to police questioning contemporaneously with his arrest regarding his knowledge of the gun; the jury thus could assess the credibility of the Defendant's statements in asserting that he knew nothing about the gun. The Government need not have eliminated any other possible theory of ownership of the gun to have presented sufficient evidence that the Defendant constructively possessed the gun. Thus, the Court finds that, viewing the evidence in the light most favorable to the verdict, a rational jury could have found that the Defendant possessed the gun hidden in his vehicle on January 11, 2011.

**D.     Counts Six and Eight: Possession with the Intent to Distribute Cocaine Base**

As to Counts 6, the Defendant argues that the Government failed to prove beyond a reasonable doubt that the Defendant possessed the crack cocaine with *the intent to distribute* it

on December 8, 2011.  Defendant also argues that, because the Government's evidence is

insufficient as to Count 6, the Government failed to prove all elements beyond a reasonable

doubt as to the crime charged in Count 8. Defendant argues primarily that the quantity of cocaine

retrieved from the Defendant's person on December 8, 2011 was an insufficient amount to

demonstrate the Defendant intended to distribute the drugs rather than possessing the drugs for

personal use, particularly in light of the Defendant's history of drug use.

The elements of possession with intent to distribute cocaine, a violation of 21 U.S.C. §

841(a)(1), are (1) knowing, (2) possession, (3) with intent to distribute. *United States v.

Anchondo-Sandoval,* 910 F.2d 1234, 1236 (5th Cir.1990).  *United States v. Munoz*, 957 F.2d 171,

174 (5th Cir. 1992).  Distribution intent may be inferred from an amount of drugs present

inconsistent with personal use or the presence of paraphernalia indicative of distribution. *See

United States v. Lucien,* 61 F.3d 366 at 376 (5th Cir.1995) (small amount of drugs with large

amount of cash, three weapons, and plastic bag with several foil packets held to be sufficient

evidence to establish intent to distribute). The Fifth Circuit has stated:

> Although the amount of cocaine in Appellant's possession was relatively small, proof of
> intent to distribute does not require the presence of a certain minimum quantity of
> controlled substance. *United States v. Grizales,* 859 F.2d 442, 446 n. 2 (7th Cir.1988).
> Proof of intent to distribute may be inferred from the presence of distribution
> paraphernalia, large quantities of cash, or the value and quality of the substance. *See
> United States v. Robinson,* 870 F.2d 612, 613 (11th Cir.1989); *United States v.
> Castellanos,* 731 F.2d 979, 985 (D.C.Cir.1984); *United States v. Glenn,* 667 F.2d 1269,
> 1272 (9th Cir.1982).

*Munoz*, 957 F.2d at 174; *See also United States v. Torres*, 212 F. App'x 361, 366-67 (5th Cir.

2007).

Here, the Government presented evidence that the Defendant was found to possess

twenty individually wrapped crack rocks, cash money, and a firearm. Taken together, the

evidence is sufficient such that a rational jury could conclude that the Defendant had the intent to

distribute the drugs. Thus, the Court finds that, viewing the evidence in the light most favorable to the verdict, the evidence was sufficient for a rational jury to convict the Defendant on both Counts six and eight.

### E.   Count Ten: Felon in Possession of a Firearm

As to Count 10, the Defendant asserts that the Government failed to prove beyond a reasonable doubt that he either actively or constructively possessed a firearm on December 9, 2011.  The Government presented evidence of audio recordings of phone calls where the Defendant allegedly discussed a firearm where he made the following statements:

> Defendant:   Tell Darryl to give Lot that TEC. You heard me?
> Male:        That what?
> Defendant:   That TEC.

Def. Mem., R. Doc. 229, 16.  The Government contends that the Defendant constructively possessed a firearm, and presented Special Agent Joseph Belisle who testified that a "Tec" is a common term for a "Tech 9 firearm," a firearm not manufactured in the state of Louisiana.

"In general, a person has constructive possession if he knowingly has ownership, dominion, or control over the contraband itself or over the premises in which the contraband is located." *United States v. McKnight*, 953 F.2d 898, 901 (5th Cir. 1992)(citation omitted). "Constructive possession need not be exclusive, it may be joint with others, and it may be proven with circumstantial evidence." *Id.* (citation omitted). The Fifth Circuit "applies 'a common sense, fact-specific approach' to determine whether constructive possession exists, *Wright,* 24 F.3d at 735, and [has] stated that 'we examine the merits of each constructive possession case independently; previous cases serve as illustration only.' *McKnight,* 953 F.2d at 902 (internal quotations omitted)." *United States v. Brown*, 66 F.3d 321 (5th Cir. 1995).

The Government's evidence demonstrates a rational jury could infer that when the Defendant referred to a "Tec" that the term referred to a specific firearm. Moreover, the jury could infer Defendant's intent and request for direct transference of actual possession of the "Tec" as evidence of his control over the contraband though potentially shared with others mentioned in the phone call. Thus, the Court finds that, viewing this evidence in the light most favorable to the verdict, a rational jury could have found the Defendant guilty of possession of a firearm as charged in Count 10.

### F.      Rule 33 Motion for New Trial

In the alternative, the Defendant argues that the Court should grant a new trial as the "interest of justice" so requires in this case. The Defendant argues that several witnesses' credibility have been "deeply compromised." Generally, the Defendant argues that these witnesses lack credibility based on their drug use habits and received various benefits from the Government, including diminished sentences. The Defendant makes a specific argument that Emanuel Casame's testimony "went far beyond" Isaac Thompson's testimony concerning the quantities of crack cocaine purchased by Sonny Allen and Burnell Allen and that Thompson did not testify that Gie Preston purchased cocaine from him.

Exercising its discretion and caution, the Court finds that the granting of a new trial is not in the interest of justice in this matter.  The evidence does not present the exceptional circumstances necessary for granting of a new trial as the weight of the evidence preponderates in favor of (rather than against) the verdict.  The Court had the opportunity to observe each witness testify and cannot find that any prior drug use habits or offers from the Government so diminished the credibility of the testimony as to render the verdict unsupported.  The Court notes

that the uncorroborated testimony of Mark Rayfield, Eugene Allen, or Emanuel Casame, as co-conspirators, may provide sufficient evidence to convict.  *Westbrook,* 119 F.3d at 1190. Moreover, evidence which merely discredits or impeaches the co-conspirators', or any other witness's testimony, does not alone justify a new trial. *Pena,* 949 F.2d at 758. Therefore, because the Court finds the Government's witnesses' testimony credible, the Defendant has asserted no ground upon which the Court finds, in the interest of justice, warrants the granting of a new trial under Rule 33.

Accordingly,

**IT IS ORDERED** that the Defendant's Motion for Acquittal and New Trial (R. Doc. 228) is **DENIED.**

New Orleans, Louisiana, this __7th__ day of _____April_____, 2015.

_____
**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT JUDGE**

23